The Stockton Morris Plan Company v. Commissioner.
Stockton Morris Plan Co. v. Commissioner
Docket No. 112458.
United States Tax Court
1943 Tax Ct. Memo LEXIS 211; 2 T.C.M. (CCH) 423; T.C.M. (RIA) 43326; July 3, 1943
*211 Albert A. Axelrod, Esq., and Lafayette J. Smallpage, Esq., Stockton Savings & Loan Bldg., Stockton, Calif., for the petitioner. Thomas M. Mather, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of deficiencies in income tax, declared value excess profits tax and personal holding company surtax for the calendar year 1940 in the amounts of $4,485.08, $564.61, and $5,254.25, respectively. The petitioner alleges that the respondent erred in his determination of the deficiencies as follows: (a) In holding that certain reserves for automobile losses called "flat charges" on automobile contracts totalling $3,625 and credited to a reserve on petitioner's books were not proper reserves and that they were improperly excluded from net income. (b) In determining that the deduction of $5,263.76 as an addition to reserve for bad debts should be disallowed. (c) In determining a long-term capital loss sustained by the petitioner on the sale in 1940 of certain unimproved real property of $500, instead of $4,750. (d) In holding that the petitioner was a personal holding company subject to the provisions of section *212 500 of the Internal Revenue Code. At the hearing of this proceeding the parties stipulated that the respondent erred in his determination under (c) above, and that the petitioner is entitled to the deduction of an additional long-term capital loss of $2,300. The parties have also stipulated that the petitioner is not liable to personal holding company surtax for 1940. Findings of Fact The petitioner is a California corporation with its principal place of business at Stockton and filed its income tax return for 1940 with the collector at San Francisco. The petitioner, among other things, is engaged in the business of purchasing from automobile dealers their conditional sales or installment contracts for the sale of automobiles. In 1939 it took on this line of business. As a part of its financing charge it charged $7.50 on each contract to cover expenses of servicing. In November, 1940, the additional charge was reduced to $5. The total amount of these additional charges made in 1940 aggregated $3,625. This amount was not reflected in petitioner's gross income. It was carried on the petitioner's books of account as "Reserve for Automobile Losses." The reserve at the beginning of *213 the fiscal year 1940 was $6,580.95. There was added to that reserve during the year the $3,625 referred to above and there was debited thereto $1,581.91, representing the expense of servicing the contracts for the year 1940. The reserve for automobile losses at the close of 1940 was $8,624.04, or an increase during the year of $2,043.09. In amending the petitioner's income tax return for 1940 the respondent added to the net income reported the $3,625 representing provision for auto losses credited to the reserve in 1940 but neglected to reduce that amount by $1,581.91 representing cost of servicing the contracts, which otherwise did not appear as an expense upon the petitioner's books of account, and which was not deducted from gross income in the income tax return. From the beginning of business in 1917 the petitioner has carried a reserve for bad debts. The reserve was made up of a charge of one-fourth of one per cent of the volume of business. Due to large losses sustained during the years 1929 to 1932 the addition to the reserve was raised from one-fourth of one per cent of the amounts of the loans to one-half of one per cent, which continued during 1931. It then was increased *214 to one per cent which increased rate was in effect until 1936 when it was reduced to one-half of one per cent. In 1937 it was approximately 53/100ths of one per cent; in 1938 27/100ths of one per cent; and in 1939 and 1940 28/100ths of one per cent of the amounts of loans. The reserve for bad debts at the close of 1937 was $13,717.22. From that point it increased to $17,206.58 at the close of 1938; $20,549.91 at the close of 1939; $23,432.81 at the close of 1940; $25,765.32 at the close of 1941; and $3,376.65 at the close of 1942. The net addition to the reserve for bad debts for 1940 was $2,882.90. The actual credits to the reserve for the year were $5,263.76; but there were recoveries of $140.78 and charge-offs of $2,521.64, making the net increase, as stated above, $2,882.90. In the audit of the petitioner's return the respondent added to the net income reported $5,263.76 representing the debits to the reserve for bad debts account. A reasonable addition to petitioner's bad debt reserve for 1940 was $5,263.76 less recoveries of $140.78. Opinion The only questions for decision are (1) whether the respondent erred in adding to the net income reported $3,625 representing a credit *215 to "Reserve for Automobile Losses" and (2) whether he erred in disallowing the deduction from gross income of $5,263.76 representing an addition to a bad debt reserve. The petitioner keeps its books of account upon the accrual basis and upon the basis of a reserve for bad debts authorized by the law and the regulations of the respondent. In 1939 it began purchasing from automobile dealers installment contracts for the sale of automobiles. In respect of each such contract purchased it made a finance charge of $7.50. This was to compensate it for any unforeseen expenses or losses which it might sustain in respect of the contract. The total amount of such finance charges for 1940 was $3,625. This amount was not reported as a part of petitioner's gross income for 1940. On its books of account the charge was offset by a like credit to "Reserve for Automobile Losses." The expenses of collection and unforeseen losses were charged to this account. For 1940 these amounted to $1,581.91. Under the petitioner's accounting it would not account for any gain or loss from the finance charge until the reserve for automobile losses had been closed out. By this method the petitioner would postpone *216 the reporting of any gain which it might realize from the transaction. The respondent claims in effect that this is not correct accounting. Section 41 I.R.C. provides in part: The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect income. * * * We are of the opinion that the respondent has the right to invoke this provision of law and to determine that the petitioner is not entitled to deduct from the finance charges of $3,625 any greater amount than $1,581.91, the amount which was actually expended by the petitioner in 1940. The respondent in his determination of deficiency failed to allow the deduction of this expense. It is clearly a deductible item. The correct amount of the disallowance under this heading is $2,043.09. The second question is merely the correct amount of the net addition to petitioner's reserve for bad debts for the year 1940. The *217 respondent has allowed no net addition upon the theory that the amount of the reserve at the beginning of the year ($20,549.91) was excessive and that there was no reason for an addition thereto in 1940. The evidence shows quite conclusively, however, that during the year 1940 the petitioner foresaw that it was likely to sustain a large loss upon its account with General Credit Co. That loss materialized in 1942 when the amount of the charge-offs of bad debts amounted to $25,028.07. Since the petitioner could easily foresee the probability of this loss we think the evidence warrants the addition made by the petitioner to its reserve for bad debts in 1940. This issue is decided in favor of the petitioner. The evidence shows a recovery during 1940 of bad debts previously charged off of $140.78 and debts actually charged off of $2,521.64. The net addition to the reserve for bad debts was in the amount of $2,882.90, Necessary adjustment, if any, will be made under the Rule 50 computation. Decision will be entered under Rule 50.